**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RAYSHAWN JENKINS, *et al.*,

                    Plaintiffs,

          vs.

TTEC SERVICES CORPORATION, *et al.*,

                    Defendants.

Case No.: 2:25-cv-00958-GMN-NJK

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 13), filed by Defendants TTEC Services and TTEC Holdings, Inc.  Plaintiffs Rayshawn Jenkins and Cameron Hickmon filed a Response, (ECF No. 17), to which Defendants filed a Reply, (ECF No. 18).  Also pending before the Court is Defendants' Motions for Leave to File Notice of Supplemental Authority, (ECF Nos. 19, 31).  Plaintiffs did not file a response and the deadline to do so has passed.[1]  For the reasons explained below, the Court GRANTS Defendants' Motion to Compel Arbitration.

## I.    BACKGROUND

TTEC Holdings owns multiple remote call centers, including on in Las Vegas where TTEC employes over 700 employees. (Compl. ¶¶ 12–14).  Plaintiffs Cameron Hickmon and Rayshawn Jenkins worked for TTEC Holdings' wholly owned subsidiary TTEC Service Corporation as Customer Service Representatives. (*Id.* ¶¶ 23, 24).  Plaintiffs allege that Defendants did not compensate their hourly workers for time spent waiting in line for security screening or performing security screening, did not pay hourly employees for each hour worked

---

[1] Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."  The Court therefore GRANTS Defendant's Motions for Leave to File Notice of Supplemental Authority as unopposed.

during training and during campaigns, and did not pay overtime to hourly employees, all in violation of Nevada state law and the Fair Labor Standards Act ("FLSA"). (*Id.* ¶¶ 36–40). Plaintiffs Hickmon and Jenkins bring suit on behalf of similarly situated TTEC employees, bringing claims for failure to pay minimum wage and overtime under Nevada law and the Fair Labor Standards Act. (*See generally* Compl.).  Defendants now move to compel Plaintiffs to individually arbitrate their claims. (Mot. Compel, ECF No. 13).

## II.    <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of written arbitration agreements, including agreements arising from most employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 119 (2001).  Section 2 of the FAA provides that:

> A written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original).  Thus, the Court's "role

under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III.   DISCUSSION

TTEC seeks an order compelling individual arbitration and dismissing, staying, or transferring this case. Plaintiffs assert several arguments for why they should not be compelled to arbitrate their claims. The Court addresses each of Plaintiffs' arguments in turn.

### A. Evidence of the Formation of an Arbitration Agreement

Plaintiffs' first argument for why they should not be compelled to arbitrate their claims is that TTEC has failed to present sufficient evidence on Plaintiffs' entry into the arbitration agreements. (Resp. 9:16–11:12, ECF No. 17). It is well settled that the question of whether the parties formed an agreement to arbitrate "is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). The standard to be applied for this issue is the same as the summary-judgment standard. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (noting that under the FAA's procedural framework, the district court must "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil

Procedure" when determining questions regarding the making of the arbitration agreement). "[W]hen considering a motion to compel arbitration [that] is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* "Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendants' evidence is sufficient to meet their initial burden of showing that Plaintiffs assented to the arbitration agreement. The evidence demonstrates that both Plaintiffs accepted the Arbitration Agreement during their onboarding process. As explained in Gretchen Pfeifer's Declaration, TTEC's onboarding process requires all new hires to review and accept the Arbitration Agreement. (Pfeifer Decl. ¶ 8, Ex. 1 to Reply, ECF No. 13-1). TTEC uses a system called Taleo for employee onboarding. (*Id.* ¶ 5). Each job applicant is assigned a unique candidate ID at the beginning of the application process that is used to track all application history. (*Id.* ¶ 6). Then, once an applicant is hired, they are assigned a unique employee ID. (*Id.*). As part of the onboarding process, applicants must electronically sign the eSignature page on their Taleo account by typing in their full name and a unique identifier that ensures they are the person who applied the signature. (*Id.* ¶ 12). The eSignature page states, in large, bold font, "Do Not E-Sign Until You Have Read the Above Statement." (eSignature Page, Ex. A to Reply, ECF No. 18-2). The statement directs the user to review TTEC's Arbitration Agreement, linked on that page, and explains that by signing, the applicant certifies that they "have read, understand, and agree to the Arbitration Agreement and understand that accepting

employment and working for TTEC, I agree to the terms and conditions of the Arbitration Agreement" (eSignature Pages, Exs. C–D to Mot. Compel, ECF No. 13-1).

Pfeiffer's Declaration explains that, once the applicants electronically sign the Arbitration Agreement, Taleo records the documents signed, the IP address of the computer used to sign the document, and the date and time of signing. (*Id.* ¶ 13).  Defendants have submitted copies of the timestamp of each of Plaintiffs' electronic signatures evidencing that they each entered their e-signatures certifying their agreement to the arbitration agreement. (Jenkins Electronic Signature at 1, Ex. F to Mot. Compel, ECF No. 13-1); (Hickmon Electronic Signature at 1, Ex. G to Mot. Compel, ECF No. 13-1).

Plaintiffs mainly argue that this evidence is not sufficient to demonstrate an enforceable arbitration agreement based on a Report and Recommendation out of the District of Colorado, *Beattie v. TTEC Healthcare Solution* (*Beattie I*), No. 18-CV-03098-RM-NRN, 2019 WL 1594254 (D. Colo. Apr. 15, 2019); and the Order rejecting that Report and Recommendation, *Beattie v. TTEC Healthcare Solution* (*Beattie II*), 1:18-CV-03098-RM-NRN, 2019 WL 2189481 (D. Colo. May 21, 2019).  In *Beattie I*, the Magistrate Judge concluded that there was insufficient evidence to demonstrate an enforceable agreement. 2019 WL 1594254, at *5–7. The District Judge disagreed, finding that there was sufficient evidence of an enforceable agreement where the plaintiffs pressed an "accept" button confirming that they read, fully understood, and accepted the terms of the arbitration agreement. *Beattie II*, 2019 WL 1594254, at *2.  Plaintiffs argue that the manifestation of assent found in *Beattie II* is not present here because Plaintiffs did not have a clear chance to press an "accept" or "decline" button. (Resp. 10:15–16).  They further contend that a fair reading of the preface to the request for signature shows that a record of assent was perhaps not required and that their signature was only needed to get the job. (*Id.* 10:16–19).  The Court disagrees.  A fair reading of the text on the eSignature page, though it contains certifications of two things (consent to the arbitration agreement and

certification that all information provided in the application was true), demonstrates the text is not unclear about the fact that a signature constitutes agreement to the arbitration agreement. Indeed, the text explicitly states: "By entering my full name and unique identifier below, I certify that I have read, understand and agree to the foregoing Arbitration Agreement . . . ." (eSignature Pages, Exs. C–D to Mot. Compel).[2] Defendants' evidence that Plaintiffs entered their signature after that statement is sufficient to show that Plaintiffs "had notice and gave some indication of assent to the contract." *See Platt v. Sodexo S.A.*, 148 F.4th 709, 719 (9th Cir. 2025) (quoting *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 199 (9th Cir. 2023).

Plaintiffs also advance a set of difficult to follow arguments that the Court attempts to sort through and address here. First, to the extent Plaintiffs challenge the legal sufficiency of an electronic signature, that argument has no legal basis because Nevada law provides for the validity of electronic signatures. Nev. Rev. Stat. 719.240. Next, Plaintiffs assert that Defendants fail to provide proof that Plaintiffs actually reviewed and signed the arbitration agreement because they provide no proof that Plaintiffs in fact opened the hyperlink and reviewed the arbitration agreement, or that Plaintiffs in fact signed the electronic signature. (Resp. 4:16–5:3).[3] As explained above, Defendants' Exhibits F and G and Pfeiffer's Declaration together provide sufficient evidence to meet Defendants' initial burden of showing that Plaintiffs assented to the agreement by a preponderance of the evidence. *See Bridge Fund Cap. Corp.*, 622 F.3d at 1005. Because Defendants made their initial showing, the burden then

---

[2] Plaintiffs' passing assertion that there was no reason for Plaintiffs to read the arbitration agreement because they were assured that the arbitration agreement was inevitable, (Resp. 11:1–2), is essentially an argument that it is unconscionable as a contract of adhesion. Adhesion contracts are those where the terms of the contract render it available on a "take it or leave it" basis. *Kindred v. Second Jud. Dist. Ct. ex. rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000). However, the Nevada Supreme Court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases because employment contracts can generally be negotiated. *Id.*

[3] The Court notes that these many of these points are raised in the "Factual and Procedural Background" section of Plaintiffs' Response, and are not accompanied by any citations to law, so it is not clear to the Court whether they are in fact intended to be arguments for the Court to address. Nevertheless, the Court addresses them in the interest of thoroughly considering whether the parties are required to arbitrate.

shifts to Plaintiffs to establish that there is a genuine issue of fact as to whether a valid agreement was entered.  The lack of proof that Plaintiffs actually opened the hyperlink does not raise a genuine issue of fact, but rather challenges the sufficiency of Defendants' evidence.  Defendants' other evidence shows that, by signing, Plaintiffs certified that they read the arbitration agreement; such a showing is sufficient to satisfy Defendants' burden.

Plaintiffs next point out that the eSignature page includes a single signature spot for two "clusters of things": both a certification that the applicant read and understood the arbitration agreement, and that all the information provided is true and correct. (Resp. 5:3–11).  Plaintiffs point to no legal authority to support the argument that one signature cannot indicate assent to multiple things at once.  Thus, this argument also fails.[4]

Because the Court finds that Defendants provide sufficient evidence to establish that Plaintiffs assented to the arbitration agreement, and Plaintiffs fail to rebut that evidence, the Court concludes that an arbitration agreement was formed.

### B.  Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs next argue that, if there is an existing arbitration agreement, it should be set aside because TTEC breached its duty of good faith and fair dealing.  A covenant of good faith and fair dealing is implied in all Nevada contracts. *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *See*

---

[4] In the "Factual and Procedural Background" section, Plaintiffs also raise an argument that Defendants essentially induced the employees not to read the agreement, which is argument that the agreement is procedurally unconscionable.  As explained in the unconscionability section below, the presence of large, bold text directing applicants to "Not E-Sign Until You Have Read the Above Statement," shows that the arbitration agreement was not hidden.  Plaintiffs cite no law to support their argument that the alleged inducement here renders the agreement unconscionable, so they do not meet their burden of proving that the agreement was unconscionable.

*Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prods. Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

Plaintiffs list several reasons for why TTEC breached the implied covenant of good faith and fair dealing.  These reasons can be summarized as an argument that TTEC did not act in good faith when it placed the class and collective action waiver in the agreements.  But a defendant breaches its duty of good faith and fair dealing by acting "in a manner unfaithful *to the purpose of the contract*," and plaintiff's "justified expectations *under the contract* were denied." *See Perry*, 900 P.2d at 338 (emphasis added).  Plaintiffs do not allege that TTEC took actions during the performance of the contract that breached its duty, nor do they make any allegations that their "justified expectations under the contract were denied" during the performance of the contract. *See Perry*, 900 P.2d at 338.  Instead, Plaintiffs arguments fundamentally take issue with the formation and fairness of the contract.  These arguments do not satisfy the basic elements of a breach of the implied duty of good faith and fair dealing claim, and Plaintiffs cite no binding or persuasive authority that persuade the Court otherwise.[5]  Plaintiffs' issues with the terms of the contract are more appropriately brought in their unconscionability arguments, which the Court addresses below.

**C. Unconscionability**

Plaintiffs next argue that the arbitration agreement is both procedurally and substantively unconscionable.  In evaluating Plaintiffs' unconscionability argument, applicable state law governs. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Nevada

---

[5] Plaintiffs rely on *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222 (D. Nev. 2016), to support their argument that the Court should set aside the contract because certain terms contravene the intention and spirit of the agreement. (Resp. 12:8–14).  The facts in *Shaw* differ significantly from those here, however.  In *Shaw*, after the parties had executed a loan modification agreement, the defendant insisted upon a new agreement with materially different terms. 201 F. Supp. 3d at 1253.  The *Shaw* court found that the defendant's insistence of a new agreement with different terms deliberately contravened the intention and spirit of the prior agreement. *Id.* While *Shaw* involved a second agreement with materially different terms, Plaintiffs here take issue with the terms of the first and only agreement between the parties.

possesses a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (Nev. 2010), *overruled on other grounds by U.S. Home Corp. v. M. Ballesteros Tr.*, 415 P.3d 32, 42 (Nev. 2018). "Nevertheless, courts may invalidate unconscionable arbitration provisions." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by U.S. Home Corp., 415 P.3d at 42*; *see also Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 49 P.3d 647, 650 (Nev. 2002). "A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." *Bill Stremmel Motors, Inc., v. IDS Leasing Corp.*, 514 P.2d 654, 657 (Nev. 1973). "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp.*, 415 P.3d at 40 (citing *Burch*, 49 P.3d at 650). Thus, the Court first addresses the issue of procedural unconscionability.

Plaintiffs first contend that the arbitration agreement is procedurally unconscionable because of its "inconspicuousness." (Resp. 14:8–14). Though an arbitration clause can be procedurally unconscionable if it is actually inconspicuous, "that is to say, in smaller print . . . or buried in an endnote or exhibit," *see U.S. Home Corp.*, 415 P.3d at 41, Plaintiffs do not actually argue that the clause was smaller than other text or hidden. Instead, Plaintiffs argue that there was a "rush of incentives" not to read the arbitration agreement, the agreement is not accessible by employees after they are hired, and the instructions to read and sign the agreement are undermined by contract instructions that the agreement is agreed to by working there. (Resp. 14:8–14). Plaintiffs cite no law to support their contentions that these factors render a contract procedurally unconscionable. On the contrary, just below the hyperlink to the Arbitration Agreement is large, bolded text that states: "Do Not E-Sign Until You Have Read the Above Statement," and is followed by a paragraph explaining that an e-signature certifies

acceptance of the arbitration agreement.  The text included several warnings to read the agreement, and access to the agreement was not hidden as contemplated in *U.S. Home Corp.*, 415 P.3d at 41.  Thus, Plaintiffs fail to show that the arbitration agreement was procedurally unconscionable.  Because Nevada law requires both procedural and substantive unconscionability, the Court need not examine substantive unconscionability before reaching the conclusion that the agreement was not unconscionable. *See id.* at 40.

### D. Effective Vindication Exception

Finally, Plaintiffs argue that the arbitration clause should not be enforced because it prevents the effective vindication of federal statutory rights, namely Plaintiffs' right to proceed as a collective under the FLSA. (Resp. 15:12–16:17).  This argument fails because the Supreme Court has "rejected efforts to conjure conflicts between the [FAA] and other federal statutes." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018).  In *Epic*, the plaintiffs argued that their arbitration agreements were unlawful under the National Labor Relations Act ("NLRA") because it protected their right to organize unions and bargain collectively. 584 U.S. at 510–11. The Supreme Court found no conflict between the FAA and NLRA because the NLRA does not express disapproval of arbitration, does not "mention class or collective action procedures," nor does it "even hint at a wish to displace the [FAA]." *Id.* at 511.  The Court further noted that thought the *Epic* plaintiffs brought their claims under the FLSA, they chose not to argue that the FLSA overcomes the FAA to permit class and collective actions, likely because the Supreme Court had already held "that an identical collective action scheme" under the Age Discrimination in Employment Act did not displace the FAA. *Id.* at 514–15.  Thus, the Supreme Court's decision in *Epic* forecloses Plaintiffs' argument that the class action waiver makes vindication over their federal rights under the FLSA impossible.

Accordingly, for all the reasons explained above, the Court GRANTS Defendant's Motion to Compel Arbitration.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 13), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motions for Leave to File Document, (ECF Nos. 19, 31), are **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISSMISSED without prejudice.**

The Clerk of Court is kindly directed to close this case.

**DATED** this __3__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court